**MARIN TV SERVICES PARTNERS, LTD., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

North Bay Television, Inc., Intervenor.

No. 90–1249.

United States Court of Appeals, District of Columbia Circuit.

Argued March 12, 1991.

Decided June 25, 1991.

Donald J. Evans with whom William D. Goddard, Washington, D.C., was on the brief, for appellant.

Gregory M. Christopher, Counsel, F.C.C., with whom Robert L. Pettit, Gen. Counsel, and Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., were on the brief, Washington, D.C., for appellee.

Seymour M. Chase was on the brief, Hackensack, N.J., for intervenor.

Before EDWARDS, D.H. GINSBURG and HENDERSON, Circuit Judges.

HENDERSON, Circuit Judge:

The Federal Communications Commission (Commission) granted North Bay Television, Inc. (North Bay) a license to build a UHF television station. The Commission based its decision in part on its finding that a competing applicant, Marin TV Services Partners, Limited (Marin), was a "sham" organization controlled by its purportedly passive investors. The Commission also allowed North Bay to amend its application and granted the license based on the amended application. Marin now challenges the Commission's decision. We conclude that the Commission properly allowed North Bay's amendment but that it failed to provide adequate reasoning for its treatment of Marin. Accordingly, we remand the latter issue to the Commission for reconsideration.

I.

North Bay and Marin both applied for a license to build a UHF television station to serve Novato, California. Even before the comparative broadcasting hearing began, North Bay ran into difficulties. Relying on its expert, North Bay had proposed to place its transmitter on Mt. St. Helena—a 4,000 foot mountain located approximately forty miles from Novato. Soon after the proposal was submitted, it came under attack. First, a local newspaper editorial claimed that a transmitter located on Mt. St. Helena would not be able to provide full coverage to Marin County, where Novato is located. Next, an engineer who worked for a competing station already located on Mt. St. Helena told North Bay's engineer that the mountain did not have line-of-sight coverage of Novato. In response, North Bay's engineer conducted further studies and again concluded that the proposed site was adequate to service Novato, although it might not provide full coverage to all of Marin County. By this time, however, Ma-

rin had petitioned the administrative law judge (ALJ) who was conducting the comparative hearing to add North Bay's Mt. St. Helena site as an issue in the hearing and submitted its own reports that the site was inadequate. After the ALJ agreed to add the issue, North Bay, attempting to avert controversy, petitioned to amend its application and change the site. Ultimately the ALJ allowed the amendment and granted North Bay the license. *Initial Decision by the Administrative Law Judge (ALJ Dec.)*, 2 FCC Rcd. 1223, 1234–36 (1987). The Commission's Review Board (Review Board) affirmed that decision, *FCC Review Board Decision (Rev.Bd.I)*, 2 FCC Rcd. 5513, 5514–15 (Rev.Bd.1987); *FCC Review Board Memorandum Opinion and Order on Reconsideration (Rev.Bd.II)*, 3 FCC Rcd. 488, 489–90 (Rev.Bd.1988).

Once the hearing began, Marin began to encounter difficulties of its own. In a comparative broadcast proceeding, the Commission gives an advantage to an applicant who is a resident of the community that will be served by the station as well as to minorities and females.[1] *See Statement of Policy on Comparative Broadcast Hearings*, 1 FCC 2d 393, 395 (1965); *Statement of Policy on Minority Ownership of Broadcasting Facilities*, 68 FCC 2d 979 (1978); *see generally Metro Broadcasting, Inc. v. FCC*, —— U.S. ——, 110 S.Ct. 2997, 3003–05, 111 L.Ed.2d 445 (1990). The Marin partnership was structured so that its two general partners had exclusive authority to control the station, while its limited partner, Broadcasting Enterprises, Inc. (BEI), was obligated to provide financing. The general partners were both female local residents and one of them was black. In determining whether to grant Marin full integration credit, the ALJ looked beyond the formal partnership agreement and determined that BEI would in fact control the station. Specifically, the ALJ pointed to BEI's active participation in the initial stages of the application process, BEI's significant financial commitment and the general partners' total lack of experience in

---

**1.** If the proposed station is to be fully controlled by local residents, the FCC gives it "full integration credit." The advantage given to minori-

ties and women is a "qualitative" credit that is added to the integration credit.

broadcasting (both were registered nurses) as well as their minimal financial stake. *ALJ Dec.*, 2 FCC Rcd. at 1236–37. Based on its finding that BEI would in fact control the station, the ALJ refused to grant Marin full integration credit. *Id.*

That decision, too, was affirmed by the Review Board. *Rev.Bd. I*, 2 FCC Rcd. at 5515–16; *Rev.Bd. II*, 3 FCC Rcd. at 488–89. In doing so, the Board relied on the same factors considered by the ALJ and, in addition, took official notice of the fact that BEI's former counsel served as an officer and director of BEI at the same time that his law firm represented Marin. *Rev.Bd. II*, 3 FCC Rcd. at 489. The cross-representation, concluded the Board, strongly indicated that the partnership was a sham, even though BEI's lawyer resigned as an officer and director of Marin and ceased providing legal services soon after the proceedings began. The Commission in turn affirmed the Review Board's decision. *FCC Decision (Comm. I)*, 3 FCC Rcd. 7186 (FCC 1988); *FCC Memorandum Opinion and Order on Reconsideration, (Comm. II)*, 5 FCC Rcd. 2509 (FCC 1990). Unlike the Board, however, the Commission focused only on the cross-representation issue and rested its decision on that ground.

Marin's failure to obtain full integration credit gave North Bay the decisive advantage in the hearing and, accordingly, the Commission granted North Bay the license. Marin seeks review of that decision and in particular challenges the Commission's determinations that (i) North Bay properly amended its application; and (ii) the Marin partnership is a sham.

## II.

In order for North Bay to file its amendment, it had to show, among other things, that (i) the need to amend was unforeseeable at the time it filed its application; and (ii) once the need became foreseeable, it acted with "due diligence." *See Horizon Broadcasting, Inc.*, 103 FCC2d 656, 659 (Rev.Bd.1986); *Erwin O'Connor Broadcasting Co.*, 22 FCC Rcd. 140, 143 (Rev.Bd.1970). The ALJ, in allowing the amendment, found that North Bay's engineer "should have foreseen a possible city-grade coverage problem" but that "it would be unduly harsh and unjustified to hold that [North Bay's] principals should be saddled with the failure of its professional engineer to make the necessary studies prior to recommending the Mt. St. Helena site." *ALJ Dec.*, 2 FCC Rcd. at 1235–36. Consequently the ALJ concluded that *North Bay*, unlike its engineer, could not have foreseen the need for the amendment. Moreover, because of North Bay's reliance on its engineer, the ALJ determined that the questions raised by the local newspaper and others regarding North Bay's site did not give North Bay sufficient notice that its site location would become an issue in the proceedings. The need to amend, reasoned the ALJ, did not become evident to North Bay until Marin added the issue. *Id.* at 1235. At that time, the ALJ concluded, North Bay acted to amend with due diligence. *Id.*

The Review Board, in affirming the ALJ's decision, approached the issue from a different angle. Unlike the ALJ, who questioned North Bay's expert's analysis but did not address the issue of whether the original site would have been appropriate, the Board found that the original site would have met all of the necessary requirements. *Rev.Bd. I*, 2 FCC Rcd. at 5514. The Board placed heavy reliance on the Commission's own Mass Media Bureau experts, who concluded that North Bay's engineer had reached the right result, albeit for the wrong reasons. *Id.* Then, because it found that the original site was appropriate, the Board concluded:

> While we note that the applicant is responsible for the engineer it chose, and although we agree that, in view of the irregular terrain around Novato, the engineer should have performed appropriate engineering studies at the time the Mt. St. Helena site was first proposed, he nevertheless ultimately demonstrated satisfactorily that the principal city-grade coverage would be provided to Novato. Having done so, the addition of the issue and the need to amend were "unforesee-

able" within the meaning of ... the Commission's Rules.

*Id.* at 5515 (footnote omitted). In contrast to the ALJ, the Board was willing to attribute the engineer's shortcoming to North Bay but did not do so because it found that the engineer, had he performed the proper tests, nonetheless could not have foreseen the need to amend the application.

Next, regarding due diligence, the Board concluded:

North Bay's reliance on the Mt. St. Helena site until the addition of a principal city-grade coverage issue against it on January 31, 1986, ... was reasonable.... In particular, we agree that the time for measuring due diligence ran from the addition of the coverage issue on January 31, because that was the applicant's first substantial notice of a problem in view of its own recent engineering studies that showed compliance with the rule.

*Id.* In short, the Board found that the questions raised by outside parties did not put North Bay on notice that the site would be disputed because North Bay could nonetheless reasonably conclude that the site was satisfactory. Once the issue was raised by Marin, reasoned the Board, North Bay then had reason to know of the problem and acted promptly.

■ In defending its decision to allow North Bay's amendment, the Commission argues before this court that North Bay could not have foreseen the need to amend its application because it relied in good faith on its engineer's expertise. North Bay should not be penalized, the Commission contends, because of its engineer's error regarding a highly technical matter. This approach to the foreseeability issue seems inconsistent with the FCC rules that require the applicant, and not the engineer, to provide data supporting the feasibility of its application. *See* 47 C.F.R. §§ 73.3513–73.3516. If an applicant were allowed to

shield itself from errors by relying on expert opinions, the potential for abuse would be great. We need not determine whether this policy is in line with FCC rules, however, because the Board did not invoke it here. As we noted, the Board, unlike the ALJ, allowed the amendment because it concluded that *the expert* could not have reasonably foreseen the site issue—not because North Bay relied on its expert's opinion. *Rev.Bd. I*, 2 FCC Rcd. at 5514–15.

■ We conclude that the Commission properly decided to allow North Bay to amend its application. Whether or not the original site would have been appropriate, the fact that the Commission's experts found the site to be appropriate suffices to support the reasonableness of the Board's conclusion that North Bay, and its engineer, could not have foreseen that its application would have to be amended. We also find no fault with the Board's conclusion that North Bay acted with due diligence. Even though some individuals questioned the suitability of the original site, their doubts alone did not put North Bay on notice that its proposed site would become an issue. At the time those questions were raised, North Bay could still reasonably have had confidence in its proposal. Accordingly, the Board reasonably determined that the time it took North Bay to amend its application should be measured from the time the issue was added to the proceedings, and, because that period was short, the Board also acted correctly in concluding that North Bay acted with due diligence.[2]

### III.

■ Marin next challenges the Commission's decision to deny it full integration credit. The Commission's finding that BEI, Marin's limited partner, will control the station, says Marin, is unsupported by the record and inconsistent with prior Commission decisions. Although we cannot

**2.** Because we conclude that it was proper for North Bay to stand by its application despite the site questions, we reject Marin's assertion that North Bay made a deliberate misrepresentation to the Commission by submitting that it was unaware of the need to amend until Marin added the issue to the proceedings. The record supports North Bay's assertion that it did not seriously question its original site until Marin challenged the location.

conclude that the record is inadequate to support the Commission's finding regarding the partnership arrangement, we agree with Marin that the Commission failed to adequately explain its reasoning and therefore we remand this issue for more reasoned analysis.

In denying Marin full integration credit, the ALJ identified the following factors as indicating that BEI would play an active role in the management of the station: (i) BEI initiated the station project; (ii) BEI hired counsel who found the first general partner and hired the engineer; (iii) BEI provided most of the funds for the project, obtained a letter of credit and bears most of the financial risk; (iv) BEI obtained Marin's proposed antenna site; (v) the general partners have a ten percent equity interest whereas BEI has a ninety percent interest; and (vi) the general partners have no broadcast experience whatsoever. *ALJ Dec.*, 2 FCC Rcd at 1237. The Review Board, in affirming the ALJ decision, focused on these same factors. *Rev.Bd. I*, 2 FCC Rcd at 5515–16. When the Board addressed this issue on reconsideration, it pointed to the fact that one of BEI's directors, who served BEI both as corporate secretary and counsel, was a member of the law firm that also represented Marin. *Rev.Bd. II*, 3 FCC Rcd at 489. This, combined with the factors listed above, led the Review Board to conclude that "BEI is unarguably the engine and the rudder of the Marin vessel; the so-called 'general partners' are, so far as the record shows, simply passengers, with neither oars nor anchor." *Id.*

By the time the case reached the Commission, an intervening Commission decision, *Victory Media, Inc.*, 3 FCC Rcd 2073 (1988), placed in question the relevancy of the factors relied on by the ALJ and the Review Board. In *Victory Media* the Commission granted the applicant full integration credit even though several supposedly passive investors had participated in the application process. The Commission discounted the importance of that participation, reasoning that "the involvement of the [passive investors] was limited to the formation and the initial prosecution of the

application" and "[t]hat, by itself, does not demonstrate a sham application or who will control the ongoing licensee." 3 FCC Rcd at 2075. In light of *Victory Media*, the Commission concluded here:

> Were the findings relating to the initiation, sponsorship and financing of the applicant by BEI the only facts before us in this case, our holding in *Victory Media* would require us to review the Board's findings.

*Comm. I*, 3 FCC Rcd at 7186. The Commission then distinguished this case from *Victory Media* on the grounds not only that BEI participated in the prosecution of the application but also that one of its directors and officers was a member of the law firm that represented Marin throughout the proceedings. *Id.* That cross-representation, reasoned the Commission, established that BEI had an active role and would continue to control the partnership in the future. *Id.* (citing *Clarification on Ownership Attribution*, 1 FCC Rcd 802, 804 (1986); *Tulsa Broadcasting Group*, 2 FCC Rcd 6124, 6129 (Rev.Bd.1987), *aff'd*, FCC 88–232 (July 23, 1988)).

On reconsideration, the Commission again concluded that the BEI officer's cross-representation by itself constituted a sufficient basis for the denial of full integration credit. *Comm. II*, 5 FCC Rcd at 2510. Additionally, the Commission pointed to a contemporaneous decision in which it had expressly overruled *Victory Media* and held that a passive investor's participation in the application process is not irrelevant to the question of whether that investor will exercise future influence over the applicant. *Id.* (citing *Coast TV*, 5 FCC Rcd 2751 (1990)). Nonetheless, the Commission did not itself reassess the factors relied on by the ALJ and Review Board but discounted by it in its first decision.

The Commission now argues that it did not deny Marin full integration credit solely on the basis of the conflicting legal cross-representation but on the record as a whole. The legal representation, the Commission submits, did not merely provide a basis to deny integration credit but also opened the door to an analysis of all of the

facts of the case. The Commission points to a paragraph in its original decision, concluding that "the totality of the record" justifies the denial of integration credit. *Comm. I,* 3 FCC Rcd at 7186. That statement, however, appears to be nothing more than standard language: it is accompanied by no analysis indicating that the Commission actually considered the record as a whole or that the cross-representation issue caused the Commission to consider other issues. If the Commission did intend to base its decision on the entire record, therefore, it failed to make that clear and, accordingly, failed to provide a sufficiently reasoned decision. *See Greater Boston Television Corp. v. FCC,* 444 F.2d 841 (D.C.Cir.1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 2233, 29 L.Ed.2d 701 (1971).

In any event, we must read the Commission's final decision to mean what it says, *see SEC v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), and it unambiguously states:

> [T]he pertinent facts upon which we made our determination on Marin's application for review are brief and simple: Douglas B. McFadden is a member of the law firm ... [that is] counsel for Marin in this proceeding, and McFadden was the Secretary and a Director of BEI, a limited partner in Marin, for over a year after Marin's application was designated for hearing.
>
> \* \* \* \* \* \*
>
> As such, he was a principal insofar as the integration credit is concerned. That is, he could not provide any services to the general partner that BEI would be precluded from providing. Clearly, BEI could not provide legal services to Marin without having its equity interest attributed to Marin.

*Comm. II,* 5 FCC Rcd at 2510. The Commission primarily relied on *Clarification of Ownership Attribution,* 1 FCC Rcd 802, 804. *See Comm. I,* 3 FCC Rcd at 7186;

*Comm. II,* 5 FCC Rcd at 2510. In that opinion, the Commission held that a limited partnership which provides legal services to the general partnership must be considered "materially involved" in the activities of the partnership. If *Clarification of Ownership Attribution* stood alone, we would have little reason to question the Commission's decision to deny integration credit. The policy stated in *Clarification of Ownership Attribution* is reasonable and neatly fits the facts of this case. But that decision does not stand alone: in *Victory Media* the Commission expressly discounted the significance of the provision of legal services by passive investors and said that the provision of those services "do[es] not relate to broadcasting, and do[es] not indicate that [the applicant] will have less than exclusive control of the station's management in the future." 3 FCC Rcd at 2074.[3] Indeed, in *Victory Media* the facts were more compelling than they are here: one of the passive investors initially acted as legal counsel for the applicant and then, when outside counsel was hired to prosecute the application, the two passive investors paid all of the legal fees. 3 FCC Rcd. at 2074.

Because of the holdings in *Clarification of Ownership Attribution* and *Victory Media,* the Commission's policy regarding the provision of legal services is far from clear. In *Clarification of Ownership Attribution* the Commission held that the provision of legal services constituted material involvement by the passive investor while, in the later case, the Commission held that it was not. Because the Commission, in affirming the denial of full integration credit to Marin, simply invoked the *Attribution of Ownership* rule without attempting to distinguish *Victory Media,* the Commission failed to provide a reasoned explanation for its decision. *See Greater Boston Television Corp. v. FCC.* While we can readily appreciate a rule that would prevent a limited partner from providing

---

**3.** Although *Coast TV* overruled the holding of *Victory Media* that a passive investor's participation in the application process is irrelevant in determining whether the investor will exert control, *Coast TV* did not address whether the provision of legal services constitutes "participation" in the application. The Commission's treatment of legal services in *Victory Media* thus seems to have survived *Coast TV.*

legal services to the applicant, the Commission has left unclear whether it has adopted such a rule. That failure requires us to remand this issue to the Commission.

For the foregoing reasons, the decision below is

*Affirmed in part and reversed and remanded in part.*