MARIN TV SERVICES PARTNERS, LTD., Appellant,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee,

North Bay Television, Inc., Intervenor.

No. 91–1563.

United States Court of Appeals, District of Columbia Circuit.

Argued March 15, 1993.

Decided May 28, 1993.

Donald J. Evans, Washington, DC, argued the cause for the appellant.

Sun Ann Kanter, Counsel, F.C.C., Washington, DC, argued the cause, for appellee. On the brief, were Renee Licht, Acting Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, and Gregory M. Christopher, Counsel, F.C.C., Washington, DC. Robert L. Pettit, Counsel, F.C.C., Washington, DC, also entered an appearance, for appellee.

Seymour M. Chase, Hackensack, NJ, filed the brief, for intervenor.

Before EDWARDS, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Marin TV Services Partners, Ltd. (Marin) appeals for the second time the grant of a UHF television station license to North Bay Television, Inc. (North Bay). The relevant facts and procedural history were set out at length in our first opinion, *Marin TV Servs. Partners, Ltd. v. FCC*, 936 F.2d 1304 (D.C.Cir.1991), (*Marin I*), and a brief summary will suffice here. In the comparative proceeding, the Federal Communications Commission (Commission) denied Marin full integration credit, finding its organizational structure was a "sham" because Douglas B. McFadden, a partner in the law firm that represented Marin before the Commission, was also an officer and director of Marin's allegedly passive limited partner, Broadcasting Enterprises, Inc. (BEI). Based on McFadden's cross-representation, the Commission concluded that BEI was not truly passive. On the first go-round we remanded for the Commission to clarify its position, in light of its conflicting precedent, on whether the provision of legal services constitutes "material involvement" that negates a limited partner's claimed passive status. On remand, the Commission clarified its position and concluded that the provision of legal services is material involvement. According-

ly, we now affirm the Commission's licensing of North Bay.

In the first appeal, we were unable to reconcile entirely Commission rulings addressing attribution of ownership interests to allegedly passive investors, specifically to limited partners. In *Attribution of Ownership Interests*, 97 F.C.C.2d 997, 1022–23 (1984), the Commission announced it was revising its attribution rules to exempt from attribution the interest of a limited partner who is "not ... involved in any material respect in the management or operation of the broadcast, cable television or newspaper entity concerned." [1] The following year, in *Reexamination of the Commission's Rules and Policies Regarding the Attribution of Ownership Interests in Broadcast, Cable Television and Newspaper Entities*, 50 Fed. Reg. 27,438 (1985), (*Reexamination*), the Commission formally adopted a revised rule incorporating the exemption: "A limited partnership interest shall be attributed to a limited partner *unless that partner is not materially involved, directly or indirectly[,] in the management or operation of the media-related activities of the partnership and the licensee or system so certifies.*" *Id.* at 27,449 (emphasis added) (codified at 47 C.F.R. § 73.3555 note 2(g)(1)). The Commission initially interpreted the exemption not to shield a limited partner "who provides legal services to the limited partnership relating to the licensing and operation of a broadcast station." *Clarification of Ownership Attribution*, 1 F.C.C.R. 802, 804 (1986) (*Clarification*). The Commission reasoned that exemption of legal services "is at odds with the plain language" of *Reexamination*, which "unambiguously provides that the partnership agreement should bar an exempt limited partner from providing 'any' services which materially relate to the media activities of the partnership," and that "it would be difficult to envision legal services that are more directly related to the media activities of the partnership than those concerning the licens-

ing and operation of broadcasting entities." *Id.* Two years later, however, the Commission adopted an apparently inconsistent view in *Victory Media, Inc.*, 3 F.C.C.R. 2073 (1988), in which it declined to discredit an applicant's integration proposal on account of a non-voting shareholder's legal services that were "limited to the formation and initial prosecution of the application." *Id.* at 2074. Finally, in *Coast TV*, 5 F.C.C.R. 2751 (1990), the Commission held that, "where a 'passive' owner is shown to be materially involved in the applicant's activities after that owner has been held out as a passive investor, that owner's interest will be considered for comparative purposes." *Id.* at 2752. Accordingly, the Commission denied Coast TV full integration credit because it found that purportedly passive limited partners had engaged in "active participation in initiating the application and in arranging for its financing ... for at least three weeks after Coast filed its application representing that these owners would be limited partners." *Id.* The Commission's *Coast* decision "expressly overruled" *Victory* "to the extent that *Victory* inadvertently suggested that the involvement of an allegedly passive owner in an applicant's activities after the applicant has adopted a bifurcated form of business organization is irrelevant to the question of whether that owner will exercise influence over the management of the applicant in the future." *Id.*

In *Marin I* we were unable to discern the Commission's real position and concluded that its "policy regarding the provision of legal services is far from clear." As we there observed:

> If *Clarification of Ownership Attribution* stood alone, we would have little reason to question the Commission's decision to deny integration credit. The policy stated in *Clarification of Ownership Attribution* is reasonable and neatly fits the facts of this case. But that decision does not stand alone: in *Victory Media* the Commission

---

1. The attribution rules "define what constitutes a 'cognizable interest' for the purpose of applying the multiple ownership rules to specific situations." *Attribution of Ownership Interests*, 97 F.C.C.2d at 999. The Commission has relied on the attribution rules, and the "material involve- ment" standard they encompass, to determine whether an investor is truly passive for the purpose of awarding integration credit. *See, e.g., Coast TV*, 5 F.C.C.R. 2751 (1990); *Victory Media, Inc.*, 3 F.C.C.R. 2073 (1988).

expressly discounted the significance of the provision of legal services by passive investors and said that the provision of those services "do[es] not relate to broadcasting, and do[es] not indicate that [the applicant] will have less than exclusive control of the station's management in the future." 3 FCCRcd. at 2074.

936 F.2d at 1309. We further noted:

Although *Coast TV* overruled the holding of *Victory Media* that a passive investor's participation in the application process is irrelevant in determining whether the investor will exert control, *Coast TV* did not address whether the provision of legal services constitutes "participation" in the application. The Commission's treatment of legal services in *Victory Media* thus seems to have survived *Coast TV*.

*Id.* n. 3. Accordingly, we remanded to the Commission to clarify whether it had adopted "a rule that would prevent a limited partner from providing legal services to the applicant." *Id.* at 1309–10.

On remand, the Commission made it clear it had intended in *Coast TV* to "overturn[ ] [its] previous holding in *Victory* " and "to treat all post-formation involvement by passive owners as participation in the application process." 6 F.C.C.R. 5976, 5977. Moreover, the Commission expressly adopted a rule that "the provision of legal services by passive owners after adoption of the applicant's organizational structure are [sic] attributable to the applicant." As the Commission explained:

*Victory* did not deal with the question of whether the passive owners' continued provision of legal services to the applicant after it filed an application representing that these owners would have a passive role was inconsistent with the applicant's business structure. *Id.* at ¶ 14. The provision of legal services was not a part of the factual situation before us in *Coast TV*. Thus, we had no occasion in *Coast* to restate specifically our holding in *Clarification* that post-formation legal services by a "limited partner" warranted attribution. By the same token, those cases were not intended to affect our holding in *Clarification*, and we find no basis now to conclude

that legal services should be treated differently from any other service relating to a partnership.

*Id.* ¶ 11 (footnote omitted). Given the Commission's ruling on remand, this proceeding seems at an end. Nevertheless, Marin again appeals the Commission's decision. We find the appeal meritless.

■ First, Marin asserts the legal services ban should not result in attribution here because services by McFadden's law partner cannot be imputed to McFadden himself, who never performed any legal services for Marin while acting as a BEI officer or director, and because Marin's partnership agreement did not prohibit provision of legal services by a limited partner. These challenges to the merits are foreclosed by our opinion in *Marin I* which approved attribution under these circumstances subject only to remand on the narrow question whether the Commission intended, given its conflicting precedents, to impose a legal services ban. *See, e.g.,* 936 F.2d at 1309 ("The policy stated in *Clarification of Ownership Attribution* is reasonable and neatly fits the facts of this case."). The Commission has now answered "yes" to that question.

■ Second, Marin argues it is unfair to "retroactively" apply the legal services ban to the cross-representation here, which occurred between September 1985 and October 31, 1986. We find no unfairness in the Commission's treatment of Marin. When McFadden assumed his positions with BEI in September 1985, the Commission had already established that limited partners are not permitted to be "involved in any material respect" in the management or operation of a partnership if they wish to avoid attribution, *see Cable Television and Newspaper Entities,* 97 F.C.C.2d 997, 1022–23 (1984), and affirmed the "material involvement" standard upon reconsideration, *see Reexamination,* 50 Fed.Reg. at 27,449 (setting forth revised 47 C.F.R. § 73.3555 note 2(g)(1)); *see also id.* at 27,445 ("We ... therefore affirm that a limited partner, to be exempt from attribution, must refrain from involvement in any material respect in the management or operation of the media activities."). The November 1986 order in *Clarification* merely made explicit

what was readily inferable from the earlier rulings, namely that providing legal services is material involvement that will result in attribution. *See Clarification,* 1 F.C.C.R. at 804 ("Apart from two specified exceptions wholly unrelated to the provision of legal services, the *Attribution Reconsideration Order* unambiguously provides that the partnership agreement should bar an exempt limited partner from providing 'any' services which materially relate to the media activities of the partnership. The petitioner's assertion that the scope of this provision does not encompass legal services, therefore, is at odds with the plain language of our *Attribution Reconsideration Order.*"). Thus, Marin and its principals were on notice before

McFadden joined BEI that his dual status might threaten Marin's integration credit.[2] When they nevertheless decided to proceed with the cross-representation, they did so at their peril and cannot claim unfairness now.

For the preceding reasons, the Commission's decision is

*Affirmed.*

2. In fact, the legal services issue arose in *Clarification* for the very reason that a law firm requested the Commission to clarify whether pro-

viding legal services constituted material involvement. *See* 1 F.C.C.R. at 804.